IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| Hunter J. Patenaude, | ) | Civil Action No. 9:18-cv-3151-RMG |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Dick's Sporting Goods, Inc., and Shock Doctor, Inc., | ) | |
| Defendants. | ) | |

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 53). For the reasons set forth below, the Court grants in part and denies in part the motion.

I. **Background**

This is a products liability case arising out an injury sustained by Plaintiff Hunter Patenaude when using a CORE Bioflex athletic cup manufactured by Defendant Shock Doctor, Inc. and sold by Defendant Dick's Sporting Goods, Inc. (Dkt. No. 1-1.) The facts of when the injury occurred are not in dispute: Plaintiff alleges that while wearing the Bioflex cup while playing lacrosse, Plaintiff was on defense and was struck by a lacrosse ball on the bottom left side of the cup when attempting to block an opponent's shot. (Dkt. No. 53-1 at 23.) Ultimately, a doctor determined that Plaintiff had a fractured left testicle, which was removed in a successful operation. (Dkt. No. 53-2.) Plaintiff brings products liability claims for strict liability, negligence and breach of warranty, alleging that the CORE Bioflex cup was defective in that it did not perform as "design, manufactured and intended" by failing to "provide protection during a sporting event." (Dkt. No. 1-1 at ¶ 16.)

Defendants filed a motion for summary judgment, arguing generally that Plaintiff cannot make out a claim for defective manufacturing, design or a failure to warn, that the Bioflex cup

contained an adequate warning and that, regardless, Plaintiff assumed the risk. (Dkt. Nos. 53.) Plaintiff opposes summary judgment, and Defendants filed a reply. (Dkt. No. 63, 66.)

## II. Legal Standard

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### III. Discussion

Defendants are correct that Plaintiff has not presented any evidence of a manufacturing defect. (Dkt. No. 53 at 8.) As courts in this District have previously acknowledged, "[t]here is not an abundance of case law in South Carolina about how a manufacturing defect differs from other defects[,]" but generally a manufacturing defect asserts that "a product does not conform to the design standards and blueprints of the manufacturer and the flaw makes the product more dangerous and therefore unfit for its intended or foreseeable uses." *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 818 (D.S.C. 2011), *on reconsideration in part* (Jan. 11, 2012) (citations omitted). Here, Plaintiff's claims are best assessed as a design defect, namely that the cup was not designed to withstand a reasonably foreseeable impact during a sporting event, and a failure to warn. Therefore, summary judgment is granted as to the manufacturing defect claim.

Next, Defendants argue that Plaintiff failed to identify a design defect, required for the tort and breach of warranty claims. However, this is incorrect. Dr. John Lloyd, Plaintiff's expert, identified as a defect the fact that the CORE Bioflex cup would "exhibit[] extreme deformation upon direct impact" from a baseball, which is similar in size to a lacrosse ball, travelling at 70 miles per hour. (Dkt. No. 43-7 at 8.) As supported by Dr. Lloyd's report, such a speed on a similarly-sized ball was potentially reasonably foreseeable as the "average shooting speed of a high-school lacrosse player." (*Id.* at 6.) Defendants also cite to *Branham v. Ford Motor Co.*, 390 S.C. 203, 701 S.E.2d 5 (2010), which requires a Plaintiff to meet the risk utility test and demonstrate a "reasonable alternative design" to bring a design defect claim in South Carolina. However, Plaintiff has presented sufficient evidence to create a dispute of material fact regarding a reasonable alternative design. First, Dr. Lloyd's report contained, generally, the market costs of each of the tested athletic cups. (Dkt. No. 43-7 at 5.) Second, Dr. Lloyd tested the safety and functionality of three other athletic cups that would have allegedly prevented the injury at issue

here, including one produced by Defendant Shock Doctor. (*Id.*) This evidence, of alternative designs actually implemented in other products, meets the test of *Branham*, and presents a fact-finder with evidence of the market costs, safety and functionality of alternative, actually used, designs. *See Riley v. Ford Motor Co.*, 408 S.C. 1, 7, 757 S.E.2d 422, 425 (Ct. App. 2014), *rev'd on other grounds*, 414 S.C. 185, 777 S.E.2d 824 (2015) ("We find the Estate met the requirements of *Branham* by presenting evidence of Ford's own alternative design for a door-latch system, which Ford used in F–150 trucks manufactured before Riley's 1998 model, and which Ford originally incorporated into the design of the 1998 model."); *Wickersham v. Ford Motor Co.*, 194 F. Supp. 3d 434, 439 (D.S.C. 2016) ("The fact that other manufacturers successfully implemented the raised threshold approach provides more than a reasonable basis for concluding that Ford could have done the same here."). Therefore, Plaintiff presented evidence to create a dispute of material that the CORE Bioflex cup, as sold, was defective.

Defendants further argue that the Court should grant summary judgment on the claim for an implied warranty of fitness for a particular purpose as Plaintiff purchased the athletic cup on his own, without assistance of any representative from Defendant Dick's Sporting Goods. Therefore, Defendant's argue, Plaintiff did not "rely upon [Defendants'] skill or judgment" in selecting the product. *See Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 482 (D.S.C. 2014) ("[A]n implied warranty of fitness for a particular purpose arises if the vendor knows when the contract is formed that the purchaser is relying on the vendor's skill or judgment in furnishing the goods.") (citations omitted). This argument is without merit. Where "the particular purpose for which a product is purchased is also the ordinary or intended purpose of the product, the warranties of merchantability and of fitness for a particular purpose merge and are cumulative, such that a plaintiff may proceed upon either theory." *Id.* (citations omitted). The intended purpose of this

product was to provide protection to the genitals and it was foreseeable for it to be used during a sporting event. Therefore, as the ordinary purpose of the product is also the particular purpose for which it was purchased, Plaintiff's implied warranty claims can proceed.

Defendants next allege that the brief warning contained on the CORE Bioflex cup mandates summary judgment. Specifically, the packaging on the cup contained the following warning: "WARNING: This protective cup is designed to reduce the risk of serious injury. No cup can prevent all injuries from impact which may occur during use." (Dkt. No. 53-1 at 32.) Under South Carolina law, "[a] supplier and manufacturer of a product are liable for failing to warn if they know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous." *Livingston v. Noland Corp.*, 293 S.C. 521, 525, 362 S.E.2d 16, 18 (1987). To begin, though no parties briefed the issue, there is at least some evidence in the record that Defendants knew or should have known that the product is likely to be dangerous, by not protecting against foreseeable injuries, as Defendants received a report of an injury from a Bioflex cup user, a mixed martial artist, "a few years ago," (Dkt. No. 53-5 at 10), and Dr. Lloyd opined that Defendants should have evaluated the CORE Bioflex cup under "real-life conditions." (Dkt. No. 43-7 at 13.) The nature of the warning creates a dispute of material fact regarding the next two factors, regarding whether a user will "realize the potential danger" and whether Defendants failed to exercise reasonable care in informing a user of the dangers. Notably, the warning here stated that "[t]his protective cup is designed to reduce the risk of serious injury." (Dkt. No. 53-1 at 32.) However, Dr. Lloyd's test creates a dispute of material fact regarding whether, under reasonably foreseeable circumstances, the Bioflex Cup serves to reduce the risk of serious injury, as the photos included in the report

show the Bioflex cup significantly compressing during the impact of a baseball. The warning itself, therefore, arguably limits a purchaser's ability to "realize the potential danger," and there is a dispute of material fact regarding whether the warning contained here provides sufficient facts to a purchaser of the "facts which make it likely to be dangerous." Plaintiff may therefore proceed with his failure to warn claim.

Defendants also argue that the brief warning here, cited above, "supports dismissal of this action as a matter of law." (Dkt. No. 53 at 11 – 12.) However, the case cited by Defendants, *Anderson v. Green Bull, Inc.*, 322 S.C. 268, 471 S.E.2d 708 (Ct. App. 1996), involved a plaintiff failing to follow the clear instructions of a warning label, namely, to keep a ladder "clear of all utility and electrical wiring. *Id.* at 270. As the South Carolina Court of Appeals recognized, a seller is not liable for a failure to warn of "any injuries caused by the use of the product if the user ignores the warning." *Id.* Here, however, there were no instructions, and instead the warning only included a general statement that "[n]o cup can prevent all injuries from impact which may occur during use." (Dkt. No. 53-1 at 32.) The warning contained here did not mandate any course of action and there were no instructions for Plaintiff to follow. Indeed, there was no way for Plaintiff to both "follow" the warning and still use the product under Defendants' argument.[1] Therefore, the brief warning does not preclude liability here. *See Brewer v. Myrtle Beach Farms Co.*, No. 2005-UP-508, 2005 WL 7084354, at *3 (S.C. Ct. App. Aug. 30, 2005) ("A product bearing a warning that the product is safe for use *if the user follows the warning* is neither defective nor unreasonably dangerous; therefore, the seller is not liable for any injuries.") (emphasis added).

---

[1] In addition to being mandated by law, Defendants position would otherwise permit any manufacturer or seller to intentionally sell an unsafe product simply by warning that use may cause, or fail to prevent, injuries, even without providing instructions on how to make the product neither defective nor unreasonably dangerous.

Finally, Defendants argue that Plaintiff assumed the risk of injury here. To show an assumption of risk: "(1) the plaintiff must have knowledge of the facts constituting a dangerous condition; (2) the plaintiff must know the condition is dangerous; (3) the plaintiff must appreciate the nature and extent of the danger; and (4) the plaintiff must voluntarily expose himself to the danger." *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 78–79, 508 S.E.2d 565, 569 (1998). As Defendants noted, the doctrine of assumption of risk has been applied in the sports context. *See Cole v. Boy Scouts of Am.*, 397 S.C. 247, 252, 725 S.E.2d 476, 478 (2011) (applying assumption of risk and granting summary judgment regarding injury in softball game in action brought against baserunner and sponsors of the game). To begin, even if Defendants proved that Plaintiff assumed the risk of injury, assumption of risk is not an absolute bar to damages where the plaintiff's degree of fault is not greater than the negligence of a defendant. *See Davenport*, 333 S.C. at 87 ("We therefore hold that a plaintiff is not barred from recovery by the doctrine of assumption of risk unless the degree of fault arising therefrom is greater than the negligence of the defendant."). Therefore, the issue of assumption of risk, to the extent it can reduce damages, is an issue that must be left to the fact-finder here and is not a bar to recovery at summary judgment. Further, applying assumption of risk on summary judgment is particularly inappropriate here where the issue relates to a defective safety product. Notably, the case turns on a dispute of material fact regarding whether the Plaintiff knew the "nature and extent of the danger" or that he "voluntarily expose[d] himself to the danger." *Davenport*, 333 S.C. at 78 – 79. Instead, the record evidence demonstrates that Plaintiff purchased an athletic cup specifically to reduce danger, and read a warning label that stated, in part, that "[t]his protective cup is designed to reduce the risk of serious injury." (Dkt. No. 53-1 at 32.) There therefore remains a dispute of material fact regarding whether Plaintiff assumed the risk here.

## IV. Conclusion

For the foregoing reasons, Defendants Motion for Summary Judgment (Dkt. No. 53) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** regarding Plaintiff's manufacturing defect claim. The Motion is otherwise **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

October 18, 2019
Charleston, South Carolina